# CHARLESTON

ROLLER *v.* McGRAW.

Submitted February 14, 1907,   Decided February 4, 1908.

1. ATTORNEY AND CLIENT—*Confidential Relation.*

   No closer or more confidential relation can exist in matters of business between parties than that of client and attorney; and while such relation exists an attorney cannot allow his personal interests, in any way, to become antagonistic to those of his client without at once giving the client full information thereof. (p. 468.)

2. SAME.

   The general rule that a client is bound by the acts of his attorney, does not hold good when the acts of the attorney were done in pursuance of a fraudulent confederation of the attorney with the party who seeks to maintain such acts of the attorney (p. 468.)

3. SAME.

   H. and S. sold to R. tracts of land, who sold the same to M. while suit was pending for balance of purchase money claimed to be due thereon from R. to H. and S. R. gave his obligation to M. to pay any recovery in favor of H. and S., R. filed his answer setting up good defense and claiming a decree over against H. and S. for deficit in quantity of land and failure of title in some tracts, for overpayment of purchase money. D., the attorney of R., without the knowledge or consent of R., entered into an agreement with M. permitting decree to be entered against R. without defense for the amount claimed to be due to H. and S. on the purchase money, which M. was to pay releasing R. from liability. M. afterwards obtained judgment by default against R. for the amount paid on said decree. R. filed his bill to enjoin the collection of said judgment alleging that when his attorney D. entered into the agreement with M. to permit the decree to be entered against R. in favor of H. and S. his said attorney D., together with others, was a

joint purchaser from R. of the lands in question with R., and that
the knowledge of such interest of his attorney, as purchaser, and
his defense to M's action had come to plaintiff's knowledge within
a year before filing his bill.  *Held:*  the bill is good on demurrer.
(p. 463.)

Appeal from Circuit Court, Webster County.

Bill by John E. Roller against John T. McGraw and
others.  Judgment for defendants, and plaintiff appeals.

*Reversed.  Remanded.*

John E. Roller, for appellant.

Dent & Dent, W. E. R. Byrne, and Jake Fisher, for
appellee.

McWhorter, Judge:

John E. Roller sold to John T. McGraw certain tracts of
land in Webster county which land said Roller had pur-
chased from Homer A. Holt and N. B. Squires.  Holt and
Squires had instituted a suit against Roller for a balance
claimed to be due on the purchase money of said lands.
During the pendency of said suit the sale was made by
Roller to McGraw, and Roller made his writing under seal
agreeing to defend said suit and to pay any money that
might be decreed therein and to save harmless the said Mc-
Graw.  Afterwards a decree was rendered for $666.37 as of
the 1st day of August, 1894, under which decree the land was
sold and purchased by McGraw for the said sum of $666.37.
McGraw brought his action against the said Roller upon the
written agreement to defend said suit and pay any decree
that might be rendered in the case and obtained a judgment
therein on the 12th day of November, 1898, for $837.42 being
the amount paid by McGraw and interest to the date of judg-
ment.  Roller obtained a writ of error to said judgment
claiming that it was obtained without due process of law and
was therefore void, said Roller having appeared specially
for the purpose only of quashing the writ and return of
service thereof.  The judgment was by this Court affirmed
on the 31st of March, 1900.  See 47 W. Va. 650.  Roller
then moved the circuit court to set aside the judgment for
errors of law apparent on the face of the record.  The cir-
cuit court entered an order overruling his motion and dis-

missing his petition for the reason that the affirmance of the judgment by the supreme court precluded any further investigation into errors of law committed prior thereto. The defendant sued out another writ of error and the judgment of the circuit court was again affirmed. See 53 W. Va. 75.

At October rules, 1903, the defendant filed his bill in equity in the circuit court of Webster county against John T. Mc-Graw, Chas. P. Dorr, Elihu Hutton, A. H. Winchester, and the administrator and heirs at law of James W. Marshall, deceased, alleging that the judgment at law against him was obtained without due process of law. He also alleges that in the suit in chancery of Holt and Squires against himself for a balance alleged to be due from him for the purchase money of the lands purchased by him from them, he had employed as his attorney the defendant in this case, Chas. P. Dorr, and had filed his answer and was prepared to prove the defense set up by him by written evidence and oral testimony that the title to part of the lands sold by Holt and Squires to him had failed to the extent of three several tracts held by adverse grants in actual possession under color of title for many years, so that their title was undoubtedly superior to the title conveyed to plaintiff by Holt and Squires; that he was not only entitled to an abatement for deficiency in the quantity of land conveyed to him but that more than the amount fairly due thereon had been paid and he was entitled to a decree against Holt and the personal representatives of Squires for such over-payment; that Holt, in his lifetime, offered to settle the case by dismissing the same "agreed" and releasing any and all further claim against plaintiff, which plaintiff declined on the ground that he was entitled to repayment of the excess which had been paid on said land and that the matter thus stood at the time plaintiff sold said land to McGraw and until the November term 1891, when it appears that McGraw, together with others, including plaintiff's said attorney Chas. P. Dorr, whom plaintiff had since ascertained to have been associated with him as partners in the purchase of said land from plaintiff, came to the conclusion and agreement among themselves that inasmuch as some of the deeds for said land had been lost by the destruction of the court house and the

records of said county, and inasmuch as they were not willing to rest their title to said land upon the obligations of plaintiff under his written agreement with said McGraw for the sale of said lands, to let a decree be entered to sell the land and when sold under said decree to buy it, in order to get the title to the 2600 acres in such shape as they desired; that in consequence of such agreement, plaintiff's attorney allowed the decree to be entered with the understanding that there should be no liability upon plaintiff but that the said decree should be paid by McGraw and his associates. That plaintiff heard of said decree and wrote his attorney Dorr, under date of November 19, 1891, as follows:

"Dear Sir: I am very much surprised to hear that a decree of sale was rendered in the suit of Holt and Squires against me? Did the Judge decide the questions involved against me? or did you fail to prove my defense. Let me know all about it. What became of my land up for delinquent taxes? Who bought it? You failed to say in your letter to me. Had I not better come out. Let me know all about these matters."

And in reply received the following letter dated November 25. 1891:

"Gen. J. E. Roller: Your note of recent date to hand and contents noted. McGraw was here and to get the titles to the 2600 acres in shape, as some of the deeds have been lost. He advised to let a decree be entered and sell under the decree. He thought he would rather pay the amount himself, than run the risks of the title. All of your land went to the State."

That plaintiff did not know at that time that Dorr was interested with McGraw and the others as a partner in the purchase of said land, or that he was in a position which was in the slightest degree antagonistic to the plaintiff and that he did not come to a knowledge of the facts of the case as stated in his bill "until within the last year" when he ascertained for the first time that not only was Dorr interested with McGraw in the purchase of his land but that the defendants Hutton, Winchester and Marshall were also interested therein and that this fact had been acknowledged by John T. McGraw as far back as April 21, 1893, and files as exhibits with his

bill the following letters from McGraw to Dorr and Dorr's reply thereto, which letters dated April 21, 1893 and April 24, 1893 respectively, are as follows:

"Dear Sir:—The negotiations for the Brinkham & Petre lands, about 4,000 acres on Desert Fork of Holly by J. B. Cratock & Co., through Mr. Butcher, attorney, contemplates the payment of $10.00 per acre for this land and $8.00 per acre for the John E. Roller Old Lick Run land. The payments are one-fourth cash and the residue in one and two years. I write not to submit the proposition to you and to ask whether the sale, if made on these lines, will be satisfactory to you. I have submitted the proposition to Capt. Marshall, Col. Hutton, Messrs. Dorr and Winchester, and want the concurrence of all the partners before the sale is concluded so that there will be no misunderstanding afterwards. Be kindly enough to write me at once your views on the subject, so that I may know how to act."

(Dorr's reply) " Dear Sir: I have just have your letter of the 21st. in regard to the sale of Webster Lands to J. E. Cratock and Co., all of which is satisfactory to me."

That although McGraw knew the facts from the beginning he concealed the same from plaintiff and took a deed for the property to himself alone and by dealing with the same in his own name alone kept the facts from the knowledge of plaintiff, that by such concealment and by other methods he successfully perpetrated this fraud not only upon the plaintiff but upon the court. Praying that the said judgment, rendered in favor of McGraw against plaintiff be set aside as not having been obtained by due process of law and therefore void, and that the same might be set aside as having been obtained by fraud and void upon that ground as well, and that the collection of said judgment be forever enjoined, and that McGraw be compelled to look to his partners in the purchase of said land from plaintiff for reimbursement of any sum which he may have paid in the discharge of the decree rendered against plaintiff, if he should be entitled to such re-imbursement.

The defendant McGraw filed his demurrer to said bill which being argued was sustained by the court and the plaintiff's bill dismissed with costs to the defendant McGraw.

As to the question of the judgment at law being rendered against the plaintiff without due process of law, the allegations of the bill show that all these questions of due process of law were settled by this Court upon former writs of error. See 47 W. Va. 650, and 53 W. Va. 75. The demurrer was properly sustained as to that part of the bill. The demurrer admits the truth of the allegations of the bill, which show that in the chancery cause of Holt and Squires against Roller the defendant had a good defense, that he was relying upon such defense, that without his knowledge or consent his attorney, who was employed to look after and defend his interests in the cause but who was interested with the said McGraw as a joint purchaser of the lands from Roller, agreed with McGraw to permit a decree to be entered notwithstanding the defense he was entitled to make, upon the agreement of McGraw to pay the decree rendered against Roller in favor of Holt and Squires. This agreement of McGraw to pay the recovery was a good consideration, it was not only a benefit to McGraw in assisting him to secure a good title to the 2600 acres but a loss and detriment to Roller in permitting the decree to be entered against him when he had a good and sufficient defense against it. In 9 Cyc. 308 "Consideration" is defined to be: "A benefit to the party promising or a loss or detriment to the party to whom the promise is made." And authorities cited. In the case at bar it was both a benefit to the promissor and a loss or detriment to the promissee.

It is claimed on behalf of the appellee that the correspondence between appellant and his attorney Dorr in November, 1891, brought to the knowledge of appellant the facts in the case, and that the appellant should have made his defense at law as he could have done. The facts constituting his whole ground of defense were not so disclosed to him in November, 1891, but only to the extent of the fact of the entry of the decree. But the more important and vital fact of the interest of appellant's attorney Dorr with McGraw and others in the purchase of the land, under the allegations of the bill, as disclosed by the correspondence between McGraw and Dorr in April, 1893, filed therewith, did not come to the knowledge of the appellant as alleged in the bill, until within a year of the time of the institution

of this suit in September, 1903. The relations between Dorr and McGraw were of such character as that appellant had no right to suspect such relation and was not put upon enquiry to ascertain whether such existed. No closer or more confidential relation can exist in matters of business between parties than that of attorney and client, and while that relation does exist it is unthinkable that an attorney would allow his personal interests in anyway to become antagonistic to those of his client without at once giving the client full information thereof. And if an attorney should voluntarily allow himself to be placed in such a position, he would naturally conceal the fact from his client. It is the duty of an attorney to place his client in possession of all facts involving his interests and any concealment thereof is a breach of good faith. In *Gooch* v. *Peebles*, 105 · N. C. 411, at page 428, the court says: "Scrupulous good faith is required of an attorney towards his client, and even after the relation ceases, the attorney can acquire no rights and assume no obligations in regard to the subject-matter of his advice and counsel antagonistic to the rights and interests of his client, unless the most ample information has been afforded to place the client on his guard." Citing Weeks on Attorney, section 271, *et seq.; Zeigler* v. *Hughes*, 55 Ill. 289. In *Heilbroener* v. *Douglass*, 32 Tex. 215, it .is held: "The general rule that a principal is bound by the acts of his agent, and a client by those of his attorney, does not hold good when the acts of the agent or attorney were done in pursuance of a fraudulent confederation of the agent or attorney with the party who seeks to maintain such acts of the agent or attorney." Also in *Haverty* v. *Haverty*, 11 Pac. (Kan.) 364: "An attorney, when acting for his client, is bound to the most scrupulous good faith. If he corruptly sells out his client's interest to the other side, a judgment thus obtained may be set aside on the charge of fraud. So, also, if a plaintiff is guilty of so influencing the attorney of the defendant, by the payment of money, without the knowledge or consent of his client, as to make it the interest of said attorney that plaintiff should obtain a judgment against his client, and such attorney, in the absence of his client, does not make any resistance to the rendition of the judgment in favor of the plaintiff, a new action may be sustained

by the defendant to set aside the former judgment, and open the case for a new and fair hearing." A note at the end of this case cites cases from various states sustaining the position. See also *Smith* v. *Miller*, 42 S. W. 182 (Tenn. Chan. App.) In *Francis* v. *Cline*, 96 Va. 201, (syl. pt. 2), it is held: "Loyalty to his trust is the most important duty which an agent owes to his principal. The dealings of an agent with his principal are closely scrutinized, and the voidable acts of the agent will not be deemed to have been confirmed by the principal except after the fullest disclosure by the agent. Confirmation must be a solemn and deliberate act of the principal, after full disclosure by the agent. If the principal's right to impeach a transaction be concealed from him, or a free disclosure be not made to him of every circumstance which it is material for him to know, or if confirmation takes place under pressure or constraint, or by the exercise of undue influence, or under the delusion that the original transaction is binding on him, or if it be merely a continuation of the original transaction, the confirmation amounts to nothing."

We conclude the allegations of the bill are sufficient to entitle the plaintiff to be heard upon the newly discovered evidence as alleged, and the demurrer should have been overruled. We therefore reverse the decree, overrule the demurrer and remand the cause to the circuit court of Webster county to be there further proceeded in according to the rules governing courts of equity.

*Reversed. Remanded.*