## J. G. STARR, Appellant, v. G. L. CRENSHAW.

Division Two, July 16, 1919.

1. **PURCHASE OF LAND: Unilateral Contract: Mutuality Supplied.** A mere option agreement to sell land, though in its inception unilateral and lacking in mutuality, may, when bottomed on a valuable consideration and accepted by the promisee within the time limited by the promisor, form the basis of an action for specific performance.

2. ———: ———: ———: **Consideration: Extension.** The word consideration is correctly defined as a benefit to the party promising, or a loss or detriment to the party to whom the promise was made. An extension by the vendor of the option agreement for thirty days, made on the last day of the option period and bottomed on a valid consideration, if accepted by the vendee on any day before the extension period expired, is enforcible and cannot be withdrawn before the expiration of such period; and if the vendor agreed to extend the option for thirty days upon condition (a) that the vendee give the vendor a certified copy of the report of his drillings for coal on the land and (b) pay interest on all deferred payments from the beginning of said thirty days in the event he should buy, and he unequivocally accepted the terms of purchase, and continued the drillings, though he did not furnish the certified report, which could be of no value to the vendor after the vendee's acceptance, there was a valuable consideration for the agreement, and the vendee is entitled to specific performance.

3. ———: **Breach of Contract for Other Reasons.** A breach of the option contract to purchase land, by the vendor before the expiration of the option period, for reasons other than the vendee's failure to perform, relieved the vendee from doing the vain and useless thing of furnishing a certified report of his drillings for coal on the land, called for by the agreement before the vendee had accepted the terms of purchase, but no longer of practical utility after he had accepted, although the drillings themselves furnished the consideration for the agreement.

Appeal from Barton Circuit Court.—*Hon. B. G. Thurman,* Judge.

REVERSED AND REMANDED (*with directions.*)

*Fred W. Kelsey* and *E. F. Cameron* for appellant.

(1) It is conceded that an option to purchase land must be supported by a consideration or it can be withdrawn at any time prior to its acceptance. The option of February 1, 1916, or rather the renewal of the old option of that date was supported by a sufficient consideration to keep it open until March 1, 1916. Crenshaw offered to extend the option provided Starr would do two things: (a) Furnish reports of drilling and (b) pay interest on deferred payments from February 1, 1916, instead of from the date the deal was finally consummated. 6 Am. & Eng. Enc. (2 Ed.), 721 (8), note 6; Green v. Brooks, 81 Cal. 328. If the respondent desired the information as to the location of coal on the land drilled by Starr it was sufficient to support a consideration for a contract. Reed v. Golden, 28 Kan. 451, 42 Am. Rep. 180. A consideration may be defined as a benefit to the party promising, or a loss or detriment to the party to whom the promise is made. 13 C. J. 311 (144A). There is a consideration if the promisee, in return for the promise, does anything legal which he is not bound to do, whether there is any actual loss or detriment to him or actual benefit to the promisor or not. 13 C. J. 315 (150) and 316; Glade v. Ford, 131 Mo. App. 164. After February 1st, Starr did drilling at his own expense and furnished the information to Crenshaw. This is of value to Crenshaw. Crenshaw obtained this information and if he is permitted to repudiate his promise or agreement to convey he would thereby be enabled to perpetrate a fraud upon Starr. 13 C. J. 318. (2) The prime function of courts of justice is to enforce the written law and enforce established contracts—the contract being as between the parties hereto but the law unto themselves.

Evans v. Evans, 196 Mo. 23. (3) When Crenshaw attempted to withdraw the land from the market, that excused Starr from further carrying out any of the terms of his contract of option and making further reports as to the drilling. 6 R. C. L. sec. 374, p. 1012; Claes Mfg. Co. v. McCord, 65 Mo. App. 507; 9 Cyc. 635. (4) The fact that Crenshaw cannot convey all of the title does not relieve him from conveying that which he has, and Starr is entitled to receive such title as he has with an abatement out of the purchase money for so much as he cannot deliver. McGhee v. Bell, 170 Mo. 133; Story on Equity Juris. (13 Ed.) sec. 779. The inchoate right of dower should be deducted from the purchase price of this land. Tebeau v. Ridge, 261 Mo. 574.

*H. W. Timmonds* for respondent.

(1) An option giving the appellant a right to purchase respondent's land, without binding the appellant to purchase, and without consideration, is not enforceable against the respondent. Davis v. Petty, 147 Mo. 382; Wallace v. Figone, 107 Mo. App. 367. The option given appellant that expired February 1st had no consideration therefor in any respect, but was merely a privilege or permission to enter respondent's land and drill to ascertain the amount of coal underlying this land. This option was extended by respondent on condition that appellant would give respondent a certified report of his drillings and pay interest on the deferred payments from February 1st if appellant concluded to buy the land—a consideration for the extension of the option, but no consideration in any contract to sell the land. Even if so, no certified report of appellant's drillings was given respondent. The drillings from the man who did the drilling, let alone giving respondent a certified report, as he agreed to do. This report of the drillings now claimed by appellant to be the consideration to support the alleged contract sued upon is merely a pretext, certainly not of sufficient importance to sus-

tain a contract. (2) Even where there is a binding legal contract for the sale of real estate, a decree for specific performance thereof does not go as a matter of course, but is granted or withheld as the equity of the case demands. Brown v. Massey, 138 Mo. 532; Davis v. Petty, 147 Mo. 385. (3) There must be a consideration for an option to make it a binding contract and enforceable. A mere option to buy land within a specified time does not give either party any claim for damages. Huggins v. Stafford, 67 Mo. App. 474; Ramsey v. West, 31 Mo. App. 676. And may be withdrawn at any time before acceptance.

FARIS, J.—This is a proceeding in equity by which it is sought to compel specific performance of a certain, option to convey the Southwest quarter of Section 28, in Township 32, Range 33, in Barton County, Missouri.

The petition is so far in conventional form as that no attack is made thereon by defendant. Among other things, this petition contains an offer by plaintiff of his willingness, ability and readiness to pay into court the sum agreed on, and "to do each and every thing required of him by said agreement and option," and he further avers that he "has at all times been willing to perform his part of said agreement, and that defendant has refused to accept said performance, and has repudiated and seeks not to be bound by said agreement."

The answer of defendant is a general denial, and a specific denial of the legal effect of the alleged option agreement and contract, coupled with the averment that said option was without any consideration whatever, and that it was withdrawn by the defendant before it was accepted by the plaintiff, and that plaintiff for this reason has no right, or claim, or interest in said land, or any cause of action against defendant.

The evidence offered consisted largely of letters and telegrams which passed from time to time between plaintiff and defendant. There was an admission that defend-

ant "is the owner of the property described, to-wit, the Northwest [*sic*] quarter of Section 28, Township 32, except Mrs. H. C. Timmonds owns an undivided one-half interest in the west half of said Southwest quarter section; and that Mr. Crenshaw is a married man aged 62, and his wife's age is 58."

On the 8th day of December, 1915, defendant, in answer to a letter of plaintiff, wrote plaintiff from Los Angeles, California, a letter, which, omitting formal parts and signature, reads thus:

> Yours of the 3rd inst. received and noted. Regarding the price of my coal land SW¼ 28, 32, 33, Barton County, Mo., will say I am holding it at $18,000 net; $6000 cash, balance in 3 equal annual payments of $4000, 6% interest, payable semi-annually secured by deed of trust, which trust deed will provide that payments shall be made sooner than the terms of the trust deed, provided more than one-third of the coal was taken out each year. In other words, there must be $4000 paid when one-third of the present coal has been removed, if such removal takes place before note is due and so on during the life of the trust deed. I will give you permission to enter the ground and do such prospecting as you may deem necessary anytime up until the 1st of February, without expense or obligation to myself and with the right to you to remove any machinery that you may be using on the premises for that purpose, without restraint or hindrance, on or before the 1st of February, 1916. This is in no sense of the word giving you a lease or possession of the property in any way whatever, except for the sole and only purpose of ascertaining to your satisfaction the amount of coal underlying the land. This privilege shall expire February 1st, 1916.
>
> If you decide to prospect, drop me a line that you accept my terms and I will reply immediately, otherwise you have no right or privilege whatever to enter the premises.

To this letter plaintiff, writing from Joplin, Missouri, to defendant on December 13, 1915, replied by letter, which letter, again omitting merely formal parts and signature, reads thus:

> Replying to your favor of Dec. 8th, will say we will immediately commence prospecting on your land following a reply from you giving us the privilege to commence prospecting, and have until the first day of February, and will prospect same and accept your proposition as per your letter of the 8th. If we can

find enough coal that is available for steam shovel stripping on the 160 acres to justify us in paying your price, we will accept your terms. If we do not find enough coal so that we can afford to pay the price we will tell you the amount of coal we think is on your land.

Hoping to hear from you by return mail, I remain,

To this letter, under date of December 17, 1915, defendant replied thus:

Yours of the 13th inst. received in regard to prospecting my coal land in Barton County. In reply, I hereby authorize you to enter upon said coal land SW¼ 28, 32, 33, Barton County, for the sole purpose of prospecting same for coal at your own expense. I will give you until February 1st to do this prospecting. If you find coal satisfactory, will sell you the land on the terms stated in my letter of the 13th inst.

You must understand that this permission to enter the ground and prospect it is in no way a lease, excepting for the mere purpose of ascertaining to your own satisfaction the quantity and quality of coal underlying the property; and further, the time limited in which you are permitted to make this investigation runs to February 1st, 1916, at which time you will remove all machinery and apparatus of whatever kind from the premises.

Thereafter, as appears from further correspondence, not particularly pertinent to the point in mind, plaintiff proceeded to drill the land in question, and on January 7, 1916, advised defendant by letter that he had put down several holes, and so far the showing was fairly satisfactory. He added: "We desire to do considerable more drilling, and several days ago bad weather set in here and all work of this nature has been suspended. There is ice all over the district and the drillers cannot do any work. If the weather gets better within the next few days we will no doubt be able to complete our prospecting by the first of Feb., otherwise we may have to ask for a few days extension."

On the 31st day of January, 1916, plaintiff sent to defendant the below telegram, to-wit:

The extreme wet and stormy weather has prevented drilling on your land, and weather at this time is very unfavorable. Will you grant thirty days extension on my option to complete work?

To this telegram, on February 1, 1916, the defendant replied as follows:

Will extend option to March 1 provided you wil to (*sic*) give certified report your drillings, also pay interest on deferred payments from February first in event you buy the land. Other parties want 60 days to prospect as soon as you are through Certified report will save delay. Wire at once.

To this telegram plaintiff wired on February 2, 1916, an acceptance as follows:

Accept your proposition. Will complete drilling as soon as possible.

Thereafter, and on February 8, 1916, plaintiff wrote defendant the following letter:

We received your telegram giving us permission until the first of March to complete the drilling, but that you wanted the notes to bear interest from the first of February in the event that we closed the deal with you. This is satisfactory to us.

The weather has improved some in the last few days and we have about completed our drilling.

According to the drilling there is something like 80 acres of coal on the 160 that probably can be handled with our shovel. No doubt there is more coal than this but it would be in the way of pillars and in such condition that we could not run our shovel over and take off the over burden.

We find that about 30 acres of this 80 acres in the southwest corner of the 160 has about a five-foot vein or strata of sand rock. This will be very expensive operating with our shovel, as it will have to be shot and we are not sure that we can even handle this rock after it is shot. However, we are willing to try this out.

In view of the fact that you will want an agreement stating that in the event a certain amount of coal should be taken off this land before the deferred payments become due, should such be the case I take it from your letter that the payments cannot run one, two and three years. If this is a fact, we deem it would be better to make you a cash offer for this property and have concluded to make an offer of $16,000 for this 160 acres. If you conclude to accept this offer, I would like to have an answer one way or the other, by wire, upon receipt of this letter.

Hoping to hear from you promptly, I remain,

This letter defendant answered on February 11, 1916, as follows:

Your favor of the 8th inst. received, and in reply will say I am willing to stand by my agreement per letter December 8th, 1915, to sell you the land for $18,000. However, I am not particular at this time about selling the land at that price; and, when you are through with the investigation, send me a statement of such investigation and call the deal off if you wish. Think I can mine the coal and make a good profit above this price.

Should you decide to buy the land, deposit $6000 in the bank of Thomas Egger on or before the 1st of March, payable to my order, on the delivery of my Warranty Deed to this land with an Abstract showing clear title, and notify me by wire when you have made such deposit and I will forward the deed to Mr. Egger with instructions to deliver to you upon the payment of this $6000 and your proper execution of the Trust Deed, per my letter of December 8th, in addition to the notes and Trust Deed and an agreement to pay the notes and Trust Deed before due, provided you take out the coal according to my letter of December 8th.

Time is the essence of my letter of December 8th; and, unless the matter is closed up strictly on time and according to the terms, I shall not feel under obligation to make the conveyance. I write you this early on this point that you may be prepared and not have an excuse for failing to be prompt. The fact is I regret now that I made you this price, however I will carry out my agreement in good faith if you are promptly on time with your part of the agreement.

Plaintiff, pending the passage between the parties of the above named telegrams and letters, continued to investigate this land by drilling the same. He caused to be drilled thereon twenty-four drill holes in all. This drilling was largely done during the month of February, 1916, and plaintiff says that all of it was probably completed before he sent to defendant the letter quoted above, wherein the statement is made by plaintiff to defendant that "there is something like 80 acres of coal on the 160 that probably can be handled with our shovel. . . . We find that about 30 acres of this 80 acres in the Southwest corner of the 160 has about a five-foot vein, or strata [sic] of sand rock." For the work of drilling this land plaintiff paid $453.75.

On February 23, 1916, defendant wired plaintiff, repudiating whatever agreement the above letters and facts constituted. This telegram is as follows:

"Recd report from out attorney . on abstract of title to our coal land. He says many defects in it which will likely require litigation in circuit court to correct. Therefore we withdraw the land from the market.

Between the 11th day of February, 1916, when the letter last above quoted was written by defendant to plaintiff, and the date of defendant's repudiation of the option, there seems to have been no communication between plaintiff and defendant, except a wire which plaintiff sent defendant on February 19, 1916, which wire read thus: "Your letter received. What is the best discount you will make if I pay all cash for the land? Answer at once."

Thereafter, and on February 24, 1916, plaintiff wrote defendant as follows:

I wired you this morning in which I thought I was complying with your proposition, but have since found that I was wrong and therefore withdraw the statements made in said telegram this morning, and accept your proposition as outlined in your favor of February 11th, 1916, as follows:

"Should you decide to buy the land, deposit $6000 in the bank of Thomas Egger on or before the 1st of March, payable to my order, on the delivery of my Warranty Deed to this land with an Abstract showing clear title, and notify me by wire when you have made such deposit and I will forward the deed to Mr. Egger with instructions to deliver to you upon the payment of this $6000, and your proper execution of the Trust Deed, per my letter of December 8th, in addition to the notes and Trust Deed and an agreement to pay the notes and Trust Deed before due, provided you take out the coal according to my letter of December 8th."

I am sending bank draft today for said sum of $6000 to Mr. Thomas Egger for deposit for the purpose above described, and request that you forward Warranty Deed and abstract as you have proposed, making said deed direct to "Jesse G. Starr of Joplin, Missouri," and I will execute the Trust Deed and notes for the deferred payments as outlined.

If you prefer, I can arrange to pay the whole amount in cash, which might simplify the drawing up and making of the papers and the closing of the deal, but will leave that to your pleasure. I will request Mr. Egger to notify you of the receipt of said deposit by wire as you request.

Starr v. Crenshaw.

Awaiting your advice as to the delivery of the Deed and also the abstract, I remain

Yours truly,

J. G. Starr,

I am enclosing Missouri form of Warranty Deed for your con-venience in preparing deed in the form desired for this State.

Immediately thereafter, plaintiff deposited the sum of $6000 with Thomas Egger, of Lamar, Missouri, as and for the proposed first payment in cash on the land in controversy, of which fact he advised defendant by wire, adding: "Send on your abstract and deed and I will execute note and deed of trust for remainder when abstract is approved." There seems to have been no answer to this wire, nor any action whatever taken thereon by either party till September 9, 1916, when plaintiff brought this action, praying for specific performance of the alleged contract to convey.

Some few further facts will become pertinent in the course of our discussion, which facts we will set out in connection with the matters to which they are apposite.

The contract here was unilateral—in other words, a mere option in plaintiff to purchase. That such option, though in its inception unilateral and lacking in mutuality may *caeteris paribus, when bottomed on a valuable*

Consideration. *consideration and accepted by the promisee within the time limited by the promisor,* form the basis of an action for specific performance, is in this State no longer open to question. [Warren v. Castello, 109 Mo. 338; Real Estate Co. v. Spelbrink, 211 Mo. 671.]

Upon this view the first and most important question in this case is, was there a valuable consideration for the option? We are of the opinion there was. The word "consideration" has been defined—correctly, we think—as "a benefit to the party promising, or a loss or detriment to the party to whom the promise was made." [Roller v. McGraw, 63 W. Va. 462; Pabst Brewing Co. v. Milwaukee, 126 Wis. 110; Corbett v. Cronk-

23—279 Mo.

hite, 239 Ill. 9; Eastman v. Miller, 113 Iowa, 404; Chicora Co. v. Dunan, 91 Md. 144; Strode v. Transit Co., 197 Mo., l. c. 623; 6 Am. & Eng. Encyc. of Law, 703; 1 Parsons on Contracts, 357.]

Plaintiff, as we gather his position from his argument and brief, seems to consider that there was no binding contract which could have been enforced in this proceeding against defendant till the extension of the option till March 1, 1915, was made. But he contends that this extension, being bottomed upon a valuable consideration, could be accepted by plaintiff up to the expiration thereof on said latter date, and that the same, for the like reason that it was bottomed upon a valuable consideration, could not be withdrawn by defendant till the expiration of such date. We think this position is well taken. The defendant, on February 1, 1916, by his telegram in that behalf, agreed to extend plaintiff's option to purchase to March 1, 1916, on condition (a) that plaintiff give defendant a certified report of defendant's drillings, and (b) that he pay interest on all deferred payments from the first day of February, 1916, in the event that plaintiff should buy the land. Plaintiff immediately and unequivocally accepted this proposition, and advised defendant that he would complete drilling as soon as possible. Plaintiff thereafter, and on February 8, 1916, wrote defendant confirming his acceptance of defendant's offer of an extention for one month as made in defendant's wire. In this latter letter plaintiff offered to pay in cash the sum of $16,000 instead of the $18,000 as contained in the price made to plaintiff by defendant in deferred payments, and asked for an answer by wire. Instead of answering by wire, defendant wrote to plaintiff the letter of February 11, 1916, wherein he said that he stood by the terms of the original option to sell the land for $18,000, and that he was not particular at this time about selling the land at that price. To this letter he added this: "Should you decide to buy the land, deposit $6000 in the bank of Thomas Egger on or before

the first of March payable to my order on the delivery of my warranty deed to this land, with an abstract showing clear title, and notify me by wire when you have made such deposit and I will forward the deed to Mr. Egger with instructions to deliver to you upon the payment of this $6000 and the proper execution of the trust deed per my letter of December 8, in addition to the notes and trust deed and an agreement to pay the notes and trust deed before due, provided you take out the coal, according to my letter of December 8. Time is the essence of my letter of December 8, and unless the matter is closed up strictly on time and according to the terms I shall not feel under obligation to make the conveyance.''

Plaintiff, pursuant to the several telegrams with relation to this drilling, continued to drill the land, and, as stated, put down in all 24 drill holes, at a total expense to him of $453.75. We think there can be no doubt that this was a sufficient consideration within the purview of the definition thereof with which we premised the discussion of this point.  For it was clearly ''a loss or detriment to the party to whom the promise was made,'' that is, to the plaintiff. It was more than this; it was a potential benefit to the defendant, the party promising, in that he was to get, or was promised in the event the plaintiff failed to take the land before the expiration of the term of the option, a certified report of the drillings made, which report, as his telegram stated, would save delay when he came to sell the land to others, in the event plaintiff did not buy. Moreover, there was, in our opinion, an actual consideration promised to defendant from plaintiff, in that defendant required, and plaintiff promised to pay, interest from February 1, 1916, in lieu of the payment of such interest only from the date of acceptance. This certified report of the drilling done was never sent by plaintiff to defendant. Such a report, as we gather from the evidence, seems to be a report made up and certified by the person doing the drilling. The custom of the com-

munity seems to require, as also does the reason of the thing, that such a report shall show the location of the drill holes upon the land, the number of such holes, together with a log of each hole, that is, a showing of the diameter and depth of the hole and of the various soils, rock, coal or other minerals or substances through which the drill passes in boring the hole. Plaintiff merely advised defendant, by a letter dated February 8th, 1916, that "there is something like 80 acres of coal on the 160 that probably can be handled with our shovel." To the sufficiency and definiteness of this report no objection was made by defendant, till he filed his answer in this action.

It is strenuously contended by defendant that the failure of plaintiff to make to defendant such certified report, among other reasons mooted, precludes the granting to defendant of the relief prayed for, or of any relief. We cannot agree to this view. In passing, it is apparent that when plaintiff closed his option by an acceptance within the period limited by the option's terms, the certified report and log of the drill holes interested defendant no more, except as a mere matter of curiosity, or as a basis for mental reflections touching whether his bargain was a good one or a bad one. This is the wholly utilitarian view, and is merely by the way. There is a stronger reason in law. That reason is, that if there was a consideration to support this option up to March 1, 1916, and we think there was and have so ruled the point, then defendant could not withdraw or recede from this option till March 1, 1916. He did, however, attempt to recede on February 23, 1916, and to this end wired plaintiff that he had "received report from our attorney on abstract of title to our coal land. He says many defects were in it, which will likely require litigation in circuit court to correct. Therefore, we withdraw the land from the market." When this notice that defendant would not abide by the option contract to sell the land to plaintiff was given, the contract in question yet had six days to run. When defendant

breached it before it expired, for reasons other than the failure of plaintiff to perform, the latter was not bound to do the vain and useless thing of furnishing a certified report of the drillings made on the land. This is the general rule adhered to almost uniformly and in all jurisdictions. [Cumberledge v. Banks, 235 Ill. 249; Malloy v. Foley, 133 N. W. 778; Niquette v. Green, 81 Kas. 569; Long v. Nedham, 37 Mont. 408; Guillaume v. Land Co., 48 Ore. 400; Jordan v. Johnson, 98 N. E. 143; Neal v. Finley, 136 Ky. 346; McLeod v. Morrison, 66 Wash. 683.]

Likewise, this same rule has been applied, and with good reason, to breaches of an option to purchase. [Winslow v. Dundom, 125 Pac. (Mont.) 137; Cape Fear Lbr. Co. v. Small, 84 S. C. 434; Harper v. Runner, 85 Neb. 343.]

It follows that the option, (a) being bottomed upon a valuable consideration, permitted acceptance by plaintiff up to the date at which by its own terms it expired, and (b) that the refusal to abide by its terms before the expiration of the period limited therein for acceptance, relieved plaintiff from a tender of the certified report of the drillings made. Having made tender and profert of full compliance with all the terms of such option on his part in his petition, plaintiff is entitled to a decree for specific performance in so far as the condition of defendant's title will allow. This decree should go for plaintiff for the whole of the east half of the Southwest quarter of the land in controversy, and for an undivided one-half of the west half of the Southwest quarter thereof, upon payment by plaintiff to defendant of the sum of $13,500, the latter sum to be diminished by the present value of the outstanding inchoate dower of the wife of defendant, in the event such wife shall refuse to join in a conveyance of said land. [Tebeau v. Ridge, 261 Mo. 547.]

Let the case be reversed and remanded, with directions to the court *nisi* to take such further action therein as is not inconsistent with what we have herein ruled.

It is so ordered. All concur.