# CHARLESTON.

THE STEUBENVILLE, EAST LIVERPOOL & BEAVER VALLEY TRACTION COMPANY *v.* THE PITTSBURGH, CINCINNATI, CHICAGO & ST. LOUIS RAILROAD COMPANY

(No. 6084)

Submitted February 28, 1928.     Decided March 6, 1928.

RAILROADS—*Railroad's Consent to Crossing Tracks at Grade Held Valid Consideration for Street Railway's Agreement to Install and Maintain Crossing (Code, c. 42, c. 52, § 11).*

The consent of a commercial steam railroad company to the crossing of its tracks at grade at public street crossings in a municipal corporation, and the consequent waiver of the right to require such street railway to proceed in a suit in equity under section 11, of Chapter 52, of the Code, to obtain a decree for the establishment of the crossings desired, and an action at law to determine compensation, is a valid consideration for the street railway's agreement to install and maintain the crossing at its own expense.

(Railroads, 33 Cyc. p. 243.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Hancock County.

Action by the Steubenville, East Liverpool & Beaver Valley Traction Company against the Pittsburgh, Cincinnati & St. Louis Railroad Company. Judgment for defendant, and plaintiff brings error.

*Affirmed.*

*Billingsley & Moore,* and *Ingram & Levy,* for plaintiff in error.

*Nesbitt, Goodwin & Nesbitt,* for defendant in error.

WOODS, JUDGE:

This is an action in assumpsit brought by The Steubenville, East Liverpool & Beaver Valley Traction Company, against The Pittsburgh, Cincinnati, Chicago & St. Louis Railroad Company, in the circuit court of Hancock county to recover the sum of $657.88, being one-half the expense of the maintenance of the intersections of plaintiff's and defendant's tracks at 9th and 11th Streets in the City of Chester. The court, sitting as a jury, found for the defendant. Plaintiff prosecutes error from a judgment entered on said finding.

On the 4th day of August, 1900, the East Liverpool & Rock Springs Street Railway Company entered into an agreement in writing with the defendant, wherein the latter consented to the former's crossing its tracks, at the street intersections aforesaid, upon condition that the street railway put in crossing frogs with derailing devices of a pattern approved by the superintendent of the defendant company, and that the street railway company shall maintain said crossings in good order and repair. The street railway company continued to keep the crossings in repair until the same was sold, in 1917, to the plaintiff traction company.

The plaintiff sets out in its declaration the various items expended on the repair and upkeep of the crossings since 1917, amounting to $1,315.76, and maintains that the defendant company is liable to it for half the amount of the expenditure, under section 61, Chapter 54, Code, which, in part, provides: ''When the tracks of two railroads cross each other, or in any way connect at a common grade, the crossing shall be made and kept in repair, and watchman maintained thereat at the joint expense of the companies owning the tracks.'' Defendant, however, relies on (1) its contract with plaintiff's predecessor, and (2) that in the absence of statute or agreement to the contrary, the street railway must construct and maintain the physical crossing wholly at its own expense.

Plaintiff attacks the contract as *nudum pactum,* making the propostion that a contract between a steam railroad and an electric railroad, casting upon the electric railroad the burden of maintaining the crossing at grade in a street in a city, is void and unenforceable.

We must first determine the effect of the contract. Courts, in the construction of contracts, look to the language employed, the subject matter, and the surrounding circumstances. It is therefore an established canon of construction that in order to arrive at the intention of the parties, the contract itself must be read in the light of the circumstances under which it was entered into. Section 11, Chapter 52, Code, provides that: "If any railroad, turnpike or canal company, or any company organized for the purpose of transporting carbon oil or natural gas or both, by means of pipes or otherwise, deem it necessary in the construction of its work or any branch or siding thereof, to cross any other railroad, turnpike or canal, or pipe line, or any state or county road at grade or otherwise, it may do so; provided, its works shall be so constructed as not to impede the passage or transportation of persons or property along the same. * * * In case the parties interested fail to agree upon such crossing or alteration as is desired, the company desiring it may bring suit in equity, and in such suit the court may, in a proper case, decree that such, or any proper crossing, or alteration, may be made upon payment of damages to be ascertained as provided in Chapter 42 of the Code, and the company desiring said crossing or alteration may thereupon proceed under said chapter to obtain the right to make such crossing or alterations. If such crossing or alterations as is allowed by this section shall cause damage to any company, or to the owner of any lands, the railroad, turnpike, canal or pipe line company first mentioned shall pay such damages. * * *" In the instant case it was an electric road desiring to cross a steam railroad. We have held that the section of the statute last quoted applies to such a situation. *Tri-State Traction Company* v. *P. W. & K. R. Company,* 67 W. Va. 389. Such decree of a court of equity is a prerequisite condition to the exercise of the right one railroad company to cross, at grade

or otherwise, the right of way or tracks of another railroad company, or to institute a suit to condemn such crossing pursuant to Chapter 42, Code. *Railroad Company* v. *Railway Company*, 70 W. Va. 98. In the absence of an agreement between the railroad company and the traction company, it was incumbent upon the traction company to go into equity and seek a decree for the establishment of the crossings desired. But this course was avoided only by the agreement entered into between the parties. As we have seen, the statute expressly provides that court action must be resorted to by the railroad seeking to cross another railroad unless the parties so agree. But, the traction company rejoins that the contract here made is void and non-enforceable because of being without consideration. It may be laid down as a general rule that there is sufficient consideration for a promise if there is any benefit to the promissor or any loss or detriment to the promisee. *Rutherford* v. *Rutherford*, 55 W. Va. 56; *County Court* v. *Hall*, 51 W. Va. 269. Instances of considerations deemed sufficient include such agreements as, relinquishment of a defense in a suit; waiver of the right to a jury trial; forbearance from contesting a judgment; abandonment of an appeal; and adjournment of a suit. *Roller* v. *McGraw*, 63 W. Va. 467; *Lanahan* v. *Heaver*, 77 Md. 605; *Smith* v. *Rogers*, 35 Vt. 140; *Russel* v. *Daniels*, 5 Colo. App. 224; *Silver* v. *Graves*, 210 Mass. 26; *Richardson* v. *Brown*, 1 Cow. (N. Y.) 255. Did any benefit accrue to the traction company by reason of not being required to go into equity to secure a decree for the establishment of the crossings? It is true, wherever a crossing is necessary in the construction of a railroad, the law allows it and confers the right to obtain it; but this power is to be exercised, *in the absence of an agreement between the parties,* under such conditions and limitations, as to the place and mode of crossing, as a court of equity may justly impose, in view of the interests of the parties and the public. *Wellsburg & State Line R. Company* v. *Panhandle Traction Company*, 56 W. Va. 18. The place and character of the crossing to be decreed are determined by the situation of the parties, the public interest, the topography of the place, the connections to be made, the expense

of making the crossing, and all the material facts and circumstances, affecting the public and the rights of the parties immediately concerned, and not upon the choice and will of the party desiring it. Hence, the court may decree a crossing other than the one described in the bill. So, we see that had the traction company been required to resort to its suit in equity under the statute, it is by no means certain that it would have obtained the location or construction of the crossings desired by it. By the contract under consideration the traction company obtained the crossings at the places it sought, obviated the chance of having them located by the court's decree elsewhere, and thereby saved the costs both of conducting the litigation in the equity suit, and of later defending its rights in a suit at law determining compensation for such taking. Moreover, the railroad company waived all rights it may have had in the equity suit and the suit at law by the terms and conditions of the contract. It is therefore clear that the traction company was benefited by the contract and that the railroad company surrendered a valuable legal right on its part thereby. From either standpoint, under the principles of law heretofore announced, there was a consideration for the contract. Having so determined, may we go into the question as to whether or not such consideration was adequate as an exchange for the consideration promised?

The courts of the land go so far as to hold that a consideration—even to support an onerous promise—is sufficient if it is only of slight value or such as can be of value to the promissor. Accordingly, they do not ordinarily go into the question of equality or inequality of consideration, but act on the presumption that parties capable to contract are capable of regulating the terms of their contracts, granting relief only when the inequality is shown to have arisen from mistake, misrepresentation or fraud. To put into effect a different rule would, in every case, impose upon the court the necessity of inquiring into and determining the value of the property received by the party giving the promise. There would be absolutely no rule by which the courts could be guided, if once they departed from the value fixed by the promissor. We are irresistably led to conclude that the contract here is

a valid and enforceable one.   The decisions from Ohio and Indiana relied upon by the traction company have no application because neither state has a similar statute to the one under consideration here.   Those cases concerned the naked right to cross.   The junior company having, in each instance, a legal right to cross the tracks of the senior company without compensation, a contract obligating the former to construct and maintain a crossing was a *nudum pactum.*   Our statute (Sec. 11, Chapter 52, Code) recognizes that agreements may be made between the parties.   This agreement necessarily must be founded in every case upon a consideration of its own.   The consideration here tested by all the authorities was a valuable one.   The parties, therefore, must be bound by the terms of their contract.   This conclusion makes immaterial the questions of whether or not section 61, Chapter 54, Code, refers to traction railroads, and whether or not a court of law would have allowed pecuniary compensation to the railroad company.

*Affirmed.*