JACKSON COUNTY, Missouri,
Respondent,

v.

KANSAS CITY, Missouri, Appellant.

CLAY COUNTY, Missouri, Respondent,

v.

KANSAS CITY, Missouri, Appellant.

No. 67758.

Supreme Court of Missouri,
En Banc.

Dec. 16, 1986.

John F. Ingraham, Asst. City Atty., Richard N. Ward, City Atty., Kansas City, for appellant.

Russell D. Jacobson, Legal Counsel, John B. Williams, County Counselor, Kansas City, Leary G. Skinner, County Counselor, Patricia Hughes, Asst. County Counselor, Liberty, for respondent.

WELLIVER, Judge.

Appellant, the City of Kansas City, Missouri, directly appeals the Circuit Court of Jackson County's order upholding the constitutionality of § 137.720, RSMo Cum. Supp.1984, and granting summary judgment in favor of respondents Jackson County and Clay County, Missouri. The circuit court ordered Kansas City to pay respondent Jackson County $545,599.57 and respondent Clay County $80,320.33, plus $87,645.00 and $9,871.00 in interest, respectively. We have exclusive appellate jurisdiction over cases involving the validity of Missouri statutes and the construc-

tion of Missouri revenue laws. Mo. Const. art. V, § 3.

## I

The facts in this case are not in dispute. In January 1979, this Court held that the disparate ad valorem property assessments in St. Louis County violated the uniformity requirement of Article X, Section 3 of the Missouri Constitution and found that the State Tax Commission had the authority and the duty to make the taxing scheme constitutionally valid. *State ex rel. Cassilly v. Riney,* 576 S.W.2d 325 (Mo. banc 1979). In February 1979, the Tax Commission ordered Jackson and Clay counties to reassess the property within their borders. In 1979 and 1980, the General Assembly enacted several provisions to facilitate the general property reassessment and the continuing assessment process. *See* §§ 137.-715–750, RSMo Cum.Supp.1984. The key provision is section 137.750, RSMo Cum. Supp.1984,[1] which sets December 31, 1984,

1.  GENERAL REASSESSMENT

137.750. **General Reassessment completed, when—payment of costs, procedure—use of data, restrictions—maintenance of real property valuations, when, payment for, procedure.—1.** No general reassessment of all taxable real property and possessory interest in a county may be ordered to be completed, and the valuations entered in the tax rolls, by the state tax commission or any court prior to the times provided in this section. The general reassessment of all taxable real property and possessory interests in each county in this state shall be completed on or before December 31, 1984. The first general reassessment conducted on a statewide basis shall be deemed completed on December 31, 1984. Changes in assessed valuation resulting from the first general reassessment conducted on a statewide basis shall be entered in the assessor's book and become effective on January 1, 1985. The city of St. Louis is included in the term "county".

. . . .

(3) An additional twenty-five percent for reasonable costs actually incurred pursuant to an approved plan which are incurred for the expenses specified in subdivision (4) of this subsection shall be reimbursed from all taxing authorities within the county, including the county but not including the state. The amount to be paid by each taxing authority shall be on the percentage basis that the proceeds received by such taxing authority for

the preceding year bears to the total tax proceeds received by all such taxing authorities within the county during that same preceding year. The county collector shall estimate the costs which will be incurred pursuant to the approved plan for the following year and which are allocable to each local taxing authority. *A percentage of all ad valorem property tax collections allocable to each taxing authority, except the state, based on the percentage basis determined as provided in this subdivision shall be deducted by the collector from the collections of taxes due on December thirty-first of that year. The collector shall bill any taxing authority collecting its own taxes for that taxing authority's proportionate share of the costs incurred pursuant to the approved plan.* Such taxing authority shall pay its proportionate share out of such funds as the governing body of that taxing authority may designate. Funds so deducted or paid shall be deposited in the fund provided for in subsection 7 of this section. Any amount which is attributable to deductions under this subdivision remaining in the fund each year after payment of all costs shall be paid to the taxing authorities from which it was derived on the same percentage basis as it was deducted originally;

. . . .

3. The governing body of any county which seeks reimbursement pursuant to chapter 137, or this section, shall establish a fund to be

as the effective date of the statewide reassessment, establishes an assessment fund for each county, and provides a system for funding the general reassessment and continuing assessment necessitated by our holding in *State ex rel. Cassilly v. Riney*, 576 S.W.2d 325 (Mo. banc 1979).

In 1980, the legislature also enacted section 137.720, RSMo Cum.Supp.1984,[2] which, in conjunction with 137.750.2(3), requires taxing authorities to make an annual contribution to the assessment fund of the county or counties in which they are located, to be used for the continuing assessment process.

Kansas City is a constitutional charter city organized under Article VI, Section 19 of the Missouri Constitution and is a taxing authority located within Jackson, Clay, and Platte[3] counties in Missouri. Kansas City collects its own ad valorem property taxes, excepting railroad and utility taxes. Jackson and Clay counties are first class counties. Mo. Const. art. VI, § 8; § 48.020, RSMo Cum.Supp.1984. Jackson and Clay counties billed Kansas City for one-half of one percent of Kansas City's ad valorem property tax collections, as provided in §§ 137.720 and 137.750. Kansas City asserted that § 137.720 was unconstitutional as applied to a constitutional charter city assessing and collecting its own ad valorem taxes and it refused to pay into the Jackson and Clay County assessment funds the amounts required by the statute.

On December 9, 1983, respondent Jackson County filed a petition in the Circuit Court of Jackson County seeking payment due it under §§ 137.720 and 137.750 and seeking a declaratory judgment of Kansas City's continuing obligation under the stat-ute. Kansas City counterclaimed for return of the one-half of one percent of the railroad and utility ad valorem property tax collections which Jackson County deducted, pursuant to §§ 137.720 and 137.750, from the amount which it collected for Kansas City. On January 11, 1984, respondent Clay County filed a similar petition in the Circuit Court of Jackson County seeking payment due it under §§ 137.720 and 137.-750 and seeking a declaratory judgment of Kansas City's continuing obligation under the statute. Kansas City again counterclaimed for return of the retained portion of its railroad and utility ad valorem property tax collections. On March 14, 1984, the two actions were consolidated upon stipulation of all of the parties.

On August 22, 1985, the circuit court, relying heavily on our decision in *State ex rel. Commissioners of State Tax Commission v. Davis*, 621 S.W.2d 511 (Mo. banc 1981), granted summary judgment for respondents upon stipulated facts and upheld the constitutionality of § 137.720, as applied to Kansas City. The circuit court ordered Kansas City to pay respondent Jackson County $545,599.57 and respondent Clay County $80,320.33,[4] plus interest of $87,645.00 and $9,871.00, respectively. The circuit court denied Kansas City's counterclaim for amount already deducted. Pursuant to respondents request for declaratory judgment, the circuit court also required Kansas City to pay the respondent counties the portion of Kansas City's tax collections becoming due them under §§ 137.720 and 137.750 no later than the twentieth day of the month following the month of tax collection. Kansas City directly appealed to this Court.

used exclusively for the purpose of funding the costs and expenses of the county or township assessors, and all funds so received shall be paid into the fund.
(Emphasis added.) Section 137.750 was substantially modified by Senate Bill No. 476, 83rd General Assembly, effective June 24, 1986. As the new § 137.750 retains the assessment funds and as § 137.720 provides for payment into that fund, the modification of § 137.750 is without consequence to the issues herein.

2. Section 137.720 was enacted by 1980 Mo.Laws p. 298, § 2 and was reenacted substantially unchanged by 1981 Mo.Laws p. 257, § 1.

3. Though Kansas City is a taxing authority within Platte County, that county is not a party to this litigation.

4. These amounts represent the amounts due respondents under the statute from the effective date of the statute until April 30, 1985.

## II

At the outset, we note that statutes are "presumed to be constitutional and this Court will not hold otherwise unless they 'clearly and undoubtedly' contravene a constitutional provision. *Prokopf v. Whaley,* 592 S.W.2d 819, 824 (Mo. banc 1980); *State ex rel. Eagleton v. McQueen,* 378 S.W.2d 449, 452 (Mo. banc 1964)." *State ex rel. Commissioners of State Tax Commission v. Davis,* 621 S.W.2d 511, 513 (Mo. banc 1981). *See also, State v. Hampton,* 653 S.W.2d 191 (Mo. banc 1983); *State v. Burnau,* 642 S.W.2d 621 (Mo. banc 1982); *Brown v. Morris,* 365 Mo. 946, 290 S.W.2d 160 (1956); *Ludlow-Saylor Wire Co. v. Wollbrinck,* 275 Mo. 339, 205 S.W. 196 (1918).

Appellant claims that § 137.720, as applied to a constitutional charter city that assesses, levies and collects its own ad valorem property taxes, contravenes Article X, Section 1[5] and other provisions of the Missouri Constitution.[6] Section 137.720 provides:

**Percentage of ad valorem property tax collection to be deducted for deposit in county assessment fund.**—A percentage of all ad valorem property tax collections allocable to each taxing authority within the county and the county shall be deducted from the collections of taxes each year and shall be deposited into the assessment fund of the county *as required under section 137.750.* The percentage

shall be one-half of one percent for all counties of the first and second class and cities not within a county and one percent for counties of the third and fourth class. The county shall bill any taxing authority collecting its own taxes. The county may also provide additional moneys for the fund. Every county shall provide all moneys necessary to assure that the fund is at least equal to the amount of moneys available for assessment purposes in the previous year. Any amount which is attributable to deductions under this section remaining in the fund each year after payment of all costs shall be paid to the taxing authority.

In *State ex rel. Commissioners of State Tax Commission v. Davis,* 621 S.W.2d 511 (Mo. banc 1981), the only reported Missouri case involving § 137.720, we examined the constitutionality of §§ 137.720 and 137.750 as applied to several school districts. We held that "[t]he tax collections are withheld to help fund the cost of securing and maintaining a valid and equitable assessment scheme. Such a scheme insures the continued collection of tax monies allocable to the school districts and is therefore sufficiently related to school purposes." *Davis,* 621 S.W.2d at 514. In *Davis* we found that the districts' receipt of benefits satisfied the Missouri Constitution, Article IX, Section 3(a)[7] and Article IX, Section 5[8] which strictly requires that public school funds be

5. **ARTICLE X**

**Taxation**

**Section 1. Taxing power—exercise by state and local government.** The taxing power may be exercised by the general assembly for state purposes, and by counties and other political subdivisions under power granted to them by the general assembly for county, municipal and other corporate purposes.

6. In examining the constitutionality of § 137.720, we necessarily decide the constitutionality of § 137.750 insofar as it is inextricably related to § 137.720.

7. **ARTICLE IX**

**Section 3(a). Payment and distribution of appropriations and income.** All appropriations by the state for the support of free public schools and the income from the pub-

lic school fund shall be paid at least annually and distributed according to law.

8. **Section 5. Public school fund—sources—payment into state treasury—investment—limitation on use of income.** The proceeds *of all certificates of indebtedness due the state school fund, and all moneys, bond, lands, and other property belonging to or donated to any state fund for public school purposes, and the net proceeds of all sales of lands and other property and effects that may accrue to the state by escheat, shall be paid into the state treasury, and securely invested under the supervision of the state board of education, and sacredly preserved as a public school fund the annual income of which shall be faithfully appropriated for establishing and maintaining free public schools, and for no other uses or purposes whatsoever.*

used for public school purposes and "for no other uses or purposes whatsoever."

Appellant argues that *Davis* is not controlling in this case since Kansas City, unlike a school district, is a constitutional charter city that has and exercises the authority to maintain its own assessment system. Appellant argues that the state assessment scheme, which respondents must provide by law,[9] is not a benefit to Kansas City since Kansas City assesses, levies, and collects its own ad valorem property taxes independently.

■ The benefit of a valid assessment scheme is no less a benefit to a taxing authority that declines to take advantage of it. Kansas City has the right and opportunity to take advantage of the valid assessment scheme which the General Assembly requires respondents to provide. The right to exercise rights has long been recognized to be a valuable property interest. *See, e.g., Starr v. Crenshaw*, 279 Mo. 344, 213 S.W. 811 (1919). *Young v. Lanyon*, 242 S.W. 685 (Mo.App.1922). Regardless of whether Kansas City exercises its option to take advantage of the assessment scheme which the legislature has provided for it, the opportunity itself is valuable and a benefit to Kansas City.

The assessment of ad valorem property taxes constitutes an act done for municipal purposes, whether done under the city's charter powers or whether done through the optional state assessment scheme. Payments in support of the optional state assessment scheme, as required by §§ 137.-720 and 137.750, do not violate Article X, Section 1 of the Missouri Constitution.

III

■ Appellant argues that, by § 137.720 the General Assembly is imposing a tax upon Kansas City for municipal or county purposes, in violation of Article X, Section 10(a)[10] of the Missouri Constitution. In *Davis*, we specifically addressed this issue and held that

> Sections 137.720 and 137.750 *do not impose a state tax* on real or personal property. They provide for the withholding of a percentage of tax monies already levied and collected. The money withheld is deposited in a county fund *to reimburse the county, not the state....* Nor do [the statutes] impose a tax solely for "county or other corporate purposes." ... *[E]qualizing assessments is both a state and a county purpose.* Valid assessment schemes in the counties of the state benefit the state at large[,] as well as the locality....

*State ex rel. Commissioners of State Tax Commission v. Davis*, 621 S.W.2d 511, 514 (Mo. banc 1981) (footnote omitted) (emphasis added). As we held in *Davis*, section 137.720 imposes no tax and does not violate Article X, Section 10(a) of the Missouri Constitution.

IV

Appellant argues that the contribution required by § 137.720 requires Kansas City to exceed the maximum rate of taxation established in Article X, Section 11(b) of the Missouri Constitution. "[Section 137.-720] provide[s] for the withholding of existing tax collections; [it] do[es] not provide

9. Mo. Const. art. X, § 11(a); § 137.115, RSMo Supp.1985.

> **137.115. Real and tangible personal property—time and manner of assessment—assessor may mail forms—classes of property, assessment percentages.**—1. All other laws to the contrary notwithstanding, the assessor or his deputies in *all counties* of this state including the city of St. Louis shall, between the first day of January and the first day of June, annually make a list of all real and tangible personal property taxable in his city, county, town or district and, except as otherwise provided in subsection 3 of this section,

> shall assess all personal property at thirty-three and one-third percent of its true value in money and all real property and possessory interests at the percent of its true value in money set in subsection 5 of this section.... (Emphasis added.)

10. **Section 10(a). Exclusion of state from local taxation for local purposes.** Except as provided in this constitution, the general assembly shall not impose taxes upon counties or other political subdivisions or upon the inhabitants or property thereof for municipal, county or other corporate purposes.

for any additional tax levy." *Davis,* 621 S.W.2d at 514. Kansas City is neither required nor permitted to exceed the maximum constitutional rate of taxation. Section 137.720 merely requires Kansas City to contribute one-half of one percent of its existing ad valorem property tax collections. "A contribution by the taxing jurisdiction within the county to the costs of insuring a valid assessment scheme is not repugnant to [Article X, Section 11(b) of the Missouri Constitution]." *Davis,* 621 S.W.2d 515.

### V

Appellant asserts that § 137.720 violates the uniformity requirement of Article X, Section 3 of the Missouri Constitution, which provides, in pertinent part, "Taxes ... shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax." Section 137.720 imposes no tax, rather, it requires appellant to pay respondent counties one-half of one percent of its *existing* ad valorem property tax collections, which, presumably, are uniform. *Davis,* 621 S.W.2d at 514. Section 137.720 imposes no tax and cannot violate the uniform *tax* requirement of Article X, Section 3 of the Missouri Constitution.

### VI

█ Finally, appellant alleges that the circuit court's order directing Kansas City to pay the respondent counties the amounts that will become payable, under § 137.720, no later than the twentieth day of the month following the month of collection, constitutes either mandamus or a mandatory injunction when an adequate remedy at law exists. Appellant misinterprets the circuit court's order, which merely declares the rights and obligations of the parties, as requested by the respondent counties. In directing appellant to pay the amounts required by § 137.720 within a specified time of its tax collection, the court was delineating the time at which appellants duties and the respondents' rights will become enforceable, which is a proper subject for declaratory judgment. *See, e.g., Polk County Bank v. Spitz,* 690 S.W.2d 192, 194 (Mo.App.1985). *See generally,* § 527.010, RSMo 1978.

Section 137.720 is constitutional as applied to appellant. The judgment of the Circuit Court of Jackson County is affirmed.

All concur.